## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BOBBY TATUM, K69478, )<br><br>Plaintiff, )<br><br>vs. )<br><br>DARREN GALLOWAY, )<br>BILLY AUSTIN, )<br>KELLY BEAL, )<br>CHRISTOPHER SHERROD, )<br>DONALD GRAIG,[1] )<br>SETH PLOTT, )<br>CHRISTOPHER WILLIAMS, )<br>LT. BRADFORD, )<br><br>Defendant. ) | Case No. 25-cv-1352-DWD |

## <u>ORDER TO SHOW CAUSE</u>

**DUGAN, District Judge:**

Plaintiff Bobby Tatum, an inmate of the Illinois Department of Corrections (IDOC) housed at Pinckneyville Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his rights at Shawnee Correctional Center (Shawnee). Plaintiff alleges that the Defendants used excessive force against him and sexually assaulted him in retaliation for filing grievances or lawsuits, and Defendant Beal placed him in a cell with sub-par conditions of confinement. Plaintiff has filed a complaint (Doc. 1), four motions (Docs. 9, 10, 13, 14), an amended complaint (Doc. 15), and an exhibit (Doc. 16). As the Court explains in this Order, this is not the first time that

---

[1] In the original complaint, Plaintiff referred to Donald Criag (Doc. 1 at 3). In the amended complaint, he referred to Donald Graig (Doc. 15 at 3). The Court assumes he is referring to the same individual. This individual was also referred to as Defendant Craig in Case No. 24-cv-1183.

Plaintiff has attempted to file a case about these exact allegations in this District.  Given the overlap between this case and Plaintiff's previous action, the Court will direct him to show cause about his exhaustion efforts before the case may proceed.

## Analysis

In the complaint and amended complaint, Plaintiff alleges that on August 6, 2023, while he was on his way to the dietary department, he overheard Defendant Galloway utter a remark about making him pay for filing lawsuits against staff.  (Doc. 1 at 7).  When Plaintiff returned to his cell after lunch, he was informed that he was being moved to another cell at Galloway's direction.  Defendants Plott and Criag told him that Galloway also directed them to kick his butt for filing grievances and lawsuits.  (Doc. 15 at 7).  Plott and Criag then engaged in excessive force by trying to break his cuffed wrists and ramming his forehead into a glass wall.  Plaintiff was briefly unconscious.  He alleges that after the assault Plott and Criag issued him a false disciplinary report.  (Doc. 15 at 8).

Defendants Austin and Williams approached immediately after the first assault while Plaintiff was still visibly bleeding.  Plaintiff alleges that his pants were around his ankles, but the two refused to pull them up, and instead paraded him exposed around the prison.  (Doc. 15 at 8).  The two pulled his arms backwards in an attempt to break his shoulders and dropped him face first on concrete.  Plaintiff was rendered briefly unconscious for a second time.  He alleges that while still lying on the ground, Defendant Beal violently jammed an obstacle into his anus.  He claims that Defendants Williams and Austin then took turns raping him, while Defendant Beal called out to nearby staff and

inmates within eyesight.  (Doc. 15 at 8).  Beal allegedly said that the treatment that Plaintiff was receiving was the result of filing lawsuits and grievances about staff.

At the end of the assault, Defendant Sherrod helped to place Plaintiff in a segregation holding cell.  In the process, Sherrod slammed Plaintiff into the window and informed Plaintiff that he had been directed to do so by Beal, Williams, Austin, and Galloway as retaliation for grievance and lawsuit activity.  (Doc. 15 at 9).  A nurse entered the cellhouse, but Beal sent her away.  Beal later placed Plaintiff in a cell that was covered with blood and feces and mold.  Plaintiff goes on to allege that Defendant Bradford violated his rights by finding him guilty of disciplinary infractions associated with these events.  (Doc. 15 at 9).  He claims Bradford was not impartial, and he acted out of retaliation in relation for another one of Plaintiff's lawsuits that personally named him.

In the original complaint filed in this case, Plaintiff clearly noted on the front page that his "prior" case was Case No. 24-cv-1183, and then he included a blank line for the Clerk of Court to populate a new case number.  (Doc. 1 at 1).  In the original complaint, he also noted that he filed a grievance in January of 2025, but he argued the grievance process was futile because he did not get a response within 60 days.  (Doc. 1 at 4).  In the amended complaint, he did not acknowledge any prior case and simply marked the grievance process as complete.  (Doc. 15 at 1, 6).

A review of publicly accessible court records reveals that *Tatum v. Craig, et al.,* Case No. 24-cv-1183 (S.D. Ill.) involved the same defendants as this lawsuit.  The complaint in that case concerned the same facts (Docs. 11, 12), and the case was recently dismissed in July of 2025 for Plaintiff's failure to exhaust his administrative remedies (Doc. 124).  The

operative claims in Case No. 24-cv-1183 concerned retaliation, the assault, and the conditions of confinement after the assault. (Doc. 124). The claims implicated Defendants Craig, Austin, Galloway, Beal, Plott, Sherrod, and Christopher Williams. Defendant Bradford was also named in Case No. 24-cv-1183, but the allegations against him were dismissed without prejudice for failure to state a claim early in the case. (Doc. 12).[2]

"Under the doctrine of collateral estoppel (also known as issue preclusion), once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *See, Our Country Home Enters., Inc. v. Comm'r of Internal Revenue*, 855 F.3d 773, 782 (7th Cir. 2017) (internal citations omitted). Collateral estoppel constraints, as a matter of federal law, apply only when "(1) the issue sought to be precluded [is] the same as that involved in the prior litigation, (2) the issue must have been actually litigated, (3) the determination of the issue must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must [have been] fully represented in the prior action." *Grede v. FCStone, LLC*, 867 F.3d 767, 776 (7th Cir. 2017) (*quoting Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co. of Chi.*, 649 F.3d 539, 547 (7th Cir. 2011)) (citation omitted).

Courts in the Seventh Circuit have applied collateral estoppel to the re-litigation of claims that were previously determined to not be properly exhausted. *See, e.g., Medford v. Smith*, 2019 WL 6531125 at *4 (S.D. Ill. 2019) (applying collateral estoppel to the second

---

[2] The allegations in this new case against Defendant Bradford also appear insufficient to sustain a due process or retaliation claim as alleged, and thus likely also would be subject to dismissal under 28 U.S.C. § 1915A.

of two parallel cases where in the first case a District Judge had already determined that the inmate had not filed *any* adequate grievances at the jail about any issue); *Shaffer v. Kraemer*, 2021 WL 5113986 at * 3 (S.D. Ind. Nov. 3, 2021) (finding that an inmate's claims in a second lawsuit were barred by collateral estoppel where his previous case was dismissed for unsuccessful completion of administrative remedies, and he had no evidence he made additional efforts to exhaust his claims before filing a second lawsuit on the same issue that named two additional officers as defendants).  The Seventh Circuit also found in *Jackson v. Murphy*, 468 Fed. App'x 616, 619 (7th Cir. 2012) that a court did not abuse its discretion by *sua sponte* applying collateral estoppel on the issue of exhaustion where the repetition of the same affirmative defense was easy to anticipate, the parties were the same, and a final judgment was already reached on the issue.

In the present case, it appears that Plaintiff is simply attempting to relitigate issues that he previously litigated.  Although the prior case did not reach a judgment on the merits, it did reach judgment on the issue of exhaustion.  Plaintiff has not explained how his exhaustion of these claims has materially changed between July 1, 2025, when his prior case was dismissed, and July 8, 2025, when he filed the original complaint in this matter.  When he filed the original complaint in this matter, he indicated that he had filed a new relevant grievance in January of 2025, but that it had not yet received a final determination.  This is problematic because an inmate cannot sue first and exhaust later. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (a sue first, exhaust later approach is not acceptable, and cannot be cured by an amended complaint).  When Plaintiff filed the amended complaint in this case on September 30, 2025, he indicated that his grievances

were fully exhausted at all levels, but amended complaints cannot cure an exhaustion problem at the time of filing, so even this would not save the filing of this case from exhaustion problems. Although a plaintiff need not anticipate or overcome an affirmative defense like exhaustion, if he alleges facts sufficient to establish that an affirmative defense applies, "the district court may dismiss the complaint on that ground." *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015).

In addition to the complaints, Plaintiff has submitted a Motion for Certification of Claims (Doc. 10) wherein he attests he got a relevant grievance back from the Administrative Review Board on July 10, 2025. The Motion also states that in this case he is attempting to pursue rape claims that he was not allowed to pursue in Case No. 24-cv-1183.[3] About six weeks after the Motion, Plaintiff filed a one-page letter from the Administrative Review Board dated August 28, 2025. (Doc. 13). The letter from an ARB chairperson indicated that it was a response to Plaintiff's PREA allegations in February of 2025 that linked back to his alleged August 2023 assault.

Based on the information available in Plaintiff's complaint and amended complaint, his recent submissions, and the recent dismissal of Case No. 24-cv-1183, the Court finds it appropriate to make Plaintiff further explain the situation before screening the case under 28 U.S.C. § 1915A or issuing service of process. Plaintiff cannot simply re-

---

[3] Plaintiff's allegation that he was not allowed to proceed on a rape claim in Case No. 24-cv-1183 appears inaccurate because factual allegations about the alleged sexual assault were set forth in the Court's Order of Initial Review (Doc. 12) as they pertain to Defendants Beal, Christopher Williams and Austin, and Plaintiff was allowed to proceed on an Eighth Amendment claim against these individuals for their alleged conduct in assaulting him. (Doc. 12 at 6-7). The claims against these defendants still existed at the time exhaustion was ruled on in July of 2025. (Doc. 124).

file Case No. 24-cv-1183 for a second time because he was unhappy with the exhaustion ruling.[4]  He also cannot maintain this lawsuit for any claims that he did not fully exhaust prior to the filing date of the original complaint—July 8, 2025.   By Plaintiff's own admissions, it appears that he got recent responses from the ARB on July 10, 2025, and August 28, 2025.   Because both responses were received *after* Plaintiff initiated this lawsuit, it would mean that he sued before completing the exhaustion process.  His filing of an amended complaint on September 30, 2025, does not cure the exhaustion problem because the claims in the original and amended complaints are identical.  Before Plaintiff can proceed further in this case, he must file a response explaining if he completed any exhaustion of his claims *before* he filed this complaint on July 8, 2025.

A ruling on Plaintiff's Motion for Recruitment of Counsel (Doc. 14) will be deferred because the Court finds Plaintiff capable of explaining his own exhaustion efforts without the assistance of counsel.  This is a simple task that relies on his own knowledge.  Although he says that he would like assistance with discovery, this case has not yet reached that stage and still relies only on his own knowledge of the facts.

## Disposition

Plaintiff is **ORDERED** to show cause about the exhaustion of his claim prior to the filing of this lawsuit.  Plaintiff must file his response with the Court within 30 days.  Plaintiff's failure to respond to this Order will result in dismissal of this case.

---

[4] Plaintiff filed an appeal in Case No. 24-cv-1183, but it was ultimately dismissed when he failed to pay the appellate filing fee.  *Tatum v. Craig, et al.*, Case No. 25-1996 (7th Cir. Oct. 6, 2025).

Plaintiff's Motion for Judge (Doc. 9) is **DENIED** because a litigant cannot request a specific judge.  Plaintiff's Motion for Status (Doc. 12) is **GRANTED** by the issuance of this Order.  Plaintiff's Motion for Certification of Claims (Doc. 10) is **DENIED** because it is not a proper way to seek relief or alter the operative claims in this case.

**IT IS SO ORDERED.**

Dated: October 16, 2025

/s *David W. Dugan*

_____
DAVID W. DUGAN
United States District Judge